UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2496 CAS (JTLx) √ <br> CV 06-2568 CAS (JTLx) | Date | July 21, 2008 |
|---|---|---|---|
| Title | Vince Catanho v. United States of America; Estate of Saul Cerros, et al. v. United States of America | | |

| Present: The Honorable | CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE | |
|---|---|---|
| PAUL SONGCO | LAURA ELIAS | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| John Lee <br> James Muller | Jason Axe |

**Proceedings:**   **The United States' Motion for Summary Judgment** (filed 04/25/08)

## I.   INTRODUCTION

The instant action seeking relief under the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., arises out of the September 22, 2004, shooting of Vincent Catanho ("Catanho") and Saul Cerros ("Cerros") by Naval Security Officer John Tate ("Officer Tate") at the Naval Air Station, North Island, Coronado ("the Coronado naval base"). Plaintiff Vince Catanho was wounded, and Saul Cerros was killed.

On April 24, 2006, Catanho filed suit against the United States and Does 1 through 10. On April 28, 2006, the Estate of Saul Cerros and Cerros' surviving spouse, Dinah Cerros, minor children, S.C. and A.C., and dependent parents, Lucilia Cerros and Baudelio Cerros (collectively, the "Cerros plaintiffs"), filed suit against the United States and Does 1 through 50. On March 12, 2007, the Court consolidated these cases. On June 1, 2007, plaintiffs filed their operative second amended complaints. Catanho and the Cerros plaintiffs assert claims for assault, battery, and negligence. The Cerros plaintiffs also assert a claim for wrongful death.

On April 25, 2008, the United States filed the present motion for summary judgment. On May 6, 2008, plaintiff Estate of Cerros filed an opposition. On May 8, 2008, Vincent Catanho filed a notice of joinder in Cerros' opposition. On May 12, 2008, the United States filed a reply. A hearing was held on July 21, 2008. After carefully

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2496 CAS (JTLx) √ <br> CV 06-2568 CAS (JTLx) | Date | July 21, 2008 |
|---|---|---|---|
| Title | Vince Catanho v. United States of America; Estate of Saul Cerros, et al. v. United States of America | | |

considering the parties' arguments, the Court finds and concludes as follows.


## II.     BACKGROUND

At approximately 10 p.m. on September 22, 2004, Cerros drove his vehicle to a parking lot outside of the Coronado naval base with Catanho and Patrick Roybal as his passengers. Defendant's Statement of Uncontroverted Facts ("DSUF") ¶ 1; Plaintiffs' Statement of Genuine Issues ("PSGI") ¶ 1. The parking lot is surrounded by a concrete wall on all sides, which leaves just a single opening for entry and exit. DSUF ¶ 2; PSGI ¶ 2. Motorcycles were parked in a corner of the parking lot. Id.

Cerros went to the parking lot with the intent to steal a motorcycle. DSUF ¶ 1; PSGI ¶ 1. He drove to the far corner of the lot where motorcycles were parked, then parked and exited his SUV. DSUF ¶ 3; PSGI ¶ 3. Cerros was able to start one of the motorcycles. Id. He directed Roybal to drive the motorcycle, and to follow him and Catanho out of the parking lot. DSUF ¶ 4; PSGI ¶ 4. Roybal then got out of the SUV, and onto the motorcycle. Id. As this was happening, someone in the watchtower overlooking the parking lot reported suspicious activity over the security radio. DSUF ¶ 5; PSGI ¶ 5; Deposition of John Tate ("Tate Dep.") at 31:20-23. Naval Security Officers Tate and Joseph Ferrer responded to the call. DSUF ¶ 5; PSGI ¶ 5. They arrived at the parking lot as Cerros, Catanho, and Roybal were attempting to leave. DSUF ¶ 5; PSGI ¶ 5. Officers Tate and Ferrer confronted the three suspects near the exit to the parking lot, and had "a brief exchange." DSUF ¶ 6; PSGI ¶ 6. Then, Cerros and Catanho, who were in the SUV, and Roybal, who was on the motorcycle, suddenly drove back to the far corner of the lot near the motorcycle parking area. Id.

As the suspects drove to the corner of the parking lot, officers Richard Crowl and Adrian Villanueva arrived at the scene. DSUF ¶ 7; PSGI ¶ 7. Officers Crowl and Ferrer proceeded on foot toward the back of the parking lot. DSUF ¶ 8; PSGI ¶ 8. As they approached the suspects, Officers Crowl and Ferrer yelled commands at them. DSUF ¶ 12; PSGI ¶ 12. Officer Crowl drew his weapon. DSUF ¶ 13; PSGI ¶ 13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2496 CAS (JTLx) √<br>CV 06-2568 CAS (JTLx) | Date | July 21, 2008 |
|---|---|---|---|
| Title | Vince Catanho v. United States of America; Estate of Saul Cerros, et al. v. United States of America | | |

Officers Tate and Villanueva remained behind, and positioned themselves near the exit to prevent the suspects from fleeing. DSUF ¶ 9; PSGI ¶ 9. Officer Tate had also positioned his car inside the parking lot, parallel to the street, so that it was largely blocking the exit. DSUF ¶ 10; PSGI ¶ 10. Officer Tate drew his gun after he observed Officer Crowl do the same. DSUF ¶ 13; PSGI ¶ 13.

Cerros and Catanho exited the SUV, and got onto the motorcycle, leaving Roybal behind. DSUF ¶ 14; PSGI ¶ 14. Cerros drove the motorcycle, and Catanho sat behind him. DSUF ¶ 15; PSGI ¶ 15. Cerros and Catanho attempted to leave the parking lot on the motorcycle, but found that Officer Tate and his vehicle were blocking the only exit. DSUF ¶ 16; PSGI ¶ 16. After driving around the parking lot, they ultimately drove back toward the opening in the concrete wall where Officer Tate was positioned. DSUF ¶ 17; PSGI ¶ 17.

Officer Tate fired three shots at the motorcycle as it attempted to exit the parking lot. DSUF ¶ 33; PSGI ¶ 33. When Officer Tate fired the first shot, the motorcycle was in front of him.[1] DSUF ¶ 34; PSGI ¶ 34. This first bullet struck the front of the motorcycle,

---

[1] On March 12, 2008, Plaintiffs' expert Mortimer N. Moore, Ph.D. submitted his expert report on the shooting. DSUF ¶ 31; PSGI ¶ 31. Dr. Moore determined that when Officer Tate fired the first shot, the motorcycle was in front of him, at a distance of approximately 40-41 feet. DSUF ¶¶ 34-36; PSGI ¶¶ 34-36. Officer Tate was on the left side of the motorcycle when he fired the second and third shots. According to Dr. Moore, if the motorcycle were traveling at 10 miles per hour, as estimated by Catanho, it would have traveled 33 feet in the two and a quarter seconds it would have taken Officer Tate to (a) perceive that the oncoming motorcycle was a threat, (b) decide to fire, (b) move his weapon into position to fire, and (d) fire a shot. DSUF ¶¶ 38-39; PSGI ¶¶ 38-39. Further, according to Dr. Moore, a half of a second passed between the first and second shots and a tenth of a second passed between the second and third shots. DSUF ¶ 41; PSGI ¶ 41. Officer Tate would only have been able to move three feet in .5 seconds. DSUF ¶ 42; PSGI ¶ 42. Finally, according to Dr. Moore, there was sufficient room for the suspects to aim their motorcycle at Officer Tate and swerve around him at the last moment as the exited the parking lot through the gap between the police vehicle and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2496 CAS (JTLx) √<br>CV 06-2568 CAS (JTLx) | Date | July 21, 2008 |
|---|---|---|---|
| Title | Vince Catanho v. United States of America; Estate of Saul Cerros, et al. v. United States of America | | |

but it did not stop the motorcycle's advance. DSUF ¶ 26; PSGI ¶ 26. Officer Tate then fired two more shots. DSUF ¶ 27; PSGI ¶ 27. Officer Tate was on the left side of the motorcycle, and approximately four to six feet to its side when he fired the second and third shots. DSUF ¶ 35; PSGI ¶ 35. One of these bullets struck Cerros, and the other struck Catanho. DSUF ¶ 28; PSGI ¶ 28. Catanho and Cerros managed to exit the parking lot on the motorcycle. DSUF ¶ 30; PSGI ¶ 30. Cerros died shortly thereafter from his wounds. Id.

### III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party has sustained its burden, the nonmoving party must then identify specific facts, drawn from materials on file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Fed. R. Civ. P. 56(c). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). See also Celotex Corp., 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. See also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631

---

west post of exit. DSUF ¶ 43; PSGI ¶ 43.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2496 CAS (JTLx) √<br>CV 06-2568 CAS (JTLx) | Date | July 21, 2008 |
|---|---|---|---|
| Title | Vince Catanho v. United States of America; Estate of Saul Cerros, et al. v. United States of America | | |

& n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

**IV.   DISCUSSION**

   **A.   The FTCA**

The United States, as sovereign, is immune from suit except when it consents to be sued. Pursuant to the FTCA, the United States waives its sovereign immunity for injuries arising from negligent acts and from the intentional torts of assault and battery when committed by federal law enforcement officers. 28 U.S.C.§ 2680(h).

Under the FTCA, the government's liability is generally that of a private individual, in analogous circumstances, under the law of the state where the tort occurred. 28 U.S.C. § 1346(b); United States v. Olson, 546 U.S. 43, 44-47 (2005); Beech Aircraft Corp. v. United States, 51 F.3d 834, 838 (9th Cir. 1995). In this case, the United States maintains that because the FTCA claims "are based upon conduct by persons in a special capacity, [i.e.,] law enforcement officers, the United States is liable in the same manner as the state equivalent." Mot. at 11 (citing Ting v. United States, 927 F.2d 1504, 1514 (9th Cir. 1991); Arnsberg v. United States, 757 F.2d 971, 979 (9th Cir. 1985)). Indeed, prior to the Supreme Court's decision in United States v. Olson, 546 U.S. 43 (2005), the Ninth Circuit looked to the standards governing the liability of state law enforcement officers to determine the United States' liability for the torts of federal law enforcement officers. See Ting v. United States, 927 F.2d 1504, 1514 (9th Cir. 1991) ("[B]ecause law enforcement officers have 'obligations, such as the duty to execute warrants, which private citizens lack (,)' we have held that 'the proper source for determining the government's liability is not the law of citizen's arrests, but rather the law governing arrests pursuant to warrants.'") (quoting Arnsberg v. United States, 757 F.2d 971, 979

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2496 CAS (JTLx) √<br>CV 06-2568 CAS (JTLx) | Date | July 21, 2008 |
|---|---|---|---|
| Title | Vince Catanho v. United States of America; Estate of Saul Cerros, et al. v. United States of America | | |

(9th Cir. 1985), cert. denied, 475 U.S. 1010 (1986)).

However, in Tekle v. United States, 511 F.3d 839 (9th Cir. 2006), the Ninth Circuit held that where the liability of a federal law enforcement officer is at issue, Olson requires a court to look to the liability of a private person, not a law enforcement officer.[2] Id. at 854 (in a case involving suit against INS officials who arrested the minor plaintiff's parents, stating that "Olson requires us to examine the law regarding the liability of a private person for false arrest, assault and battery, and intentional infliction of emotional distress"); see also McCloskey v. Mueller, 446 F.3d 262, 267 (1st Cir. 2006) (in case involving FBI and its employees, stating that court must look to liability of private persons under state law, but that it could not look to "derive analogues from instances in which state law enforcement officers . . . would be liable under state law"); Lumsden v. United States, 2008 WL 1987136, at *13 (E.D.N.C. May 7, 2008) ("Whether or not state or local law enforcement officers would be liable under state law on the same or analogous facts is irrelevant under the Federal Tort Claims Act."). Because this incident occurred in California, in deciding the instant motion for summary judgment, the Court will look to California law as it applies to private persons.

    **B.    State Law**

The United States moves for summary judgment on the assault, battery, wrongful death, and negligence claims. The Court will first address the elements of each tort claim, and the defenses to which the United States claims the officers are entitled.

    **1.    Assault and Battery**

Under California law, assault is defined as the "unlawful attempt, coupled with a

---

[2] In Olson, the Supreme Court held that the FTCA waives the United States' sovereign immunity only for those "circumstances where the United States, if a private person," would be liable, but not where local law would make a state or municipal entity liable even where uniquely governmental functions are at issue. Olson, 124 S.Ct. at 46 (emphasis omitted) (quoting 28 U.S.C. § 1346(b)(1)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2496 CAS (JTLx) √<br>CV 06-2568 CAS (JTLx) | Date | July 21, 2008 |
|---|---|---|---|
| Title | Vince Catanho v. United States of America; Estate of Saul Cerros, et al. v. United States of America | | |

present ability, to commit a violent injury on the person of another." Cal. Penal Code § 242. Battery is defined as "any willful and unlawful use of force or violence upon the person of another."[3] Id. To establish assault under California law, plaintiffs must show that (1) Officer Tate acted with the intent to cause harmful contact; (2) plaintiffs believed that Officer Tate was about to injure them; (3) plaintiffs did not consent to Officer Tate's conduct; (4) plaintiffs were harmed; and (5) Officer Tate's conduct was a substantial factor in causing plaintiffs' harm. 3-13 Cal. Forms of Jury Instructions, Civil, No. VF-1302. To recover upon a claim of battery, plaintiffs must show that (1) Officer Tate intentionally did an act which resulted in a harmful contact; (2) plaintiffs did not consent to that contact; and (3) the harmful contact injured plaintiffs. Id. at No. VF-1300.

California law provides that a person may use force in self defense to protect against wrongful injury. Cal. Civ. Code § 50; see Villines v. Tomerlin, 206 Cal. App. 2d 448 (1962). "Generally stated, the force that one may use in self-defense is that which reasonably appears necessary, in view of all the circumstances of the case, to prevent the impending injury." Vaughn v. Jonas, 31 Cal. 2d 586, 600 (1946).

### 2. Negligence

A claim for negligence involves the following elements: (1) a legal duty of care; (2) a breach of that duty; and (3) causation. See Toomey v. Southern Pac. R. Co., 86 Cal. 374, 381 (1890). As such, a defendant does not act negligently if his or her actions were reasonable under the circumstances. Further under California law, "[a]ny necessary force may be used to protect from wrongful injury the person or property of oneself." Cal. Civ. Code § 50.

### 3. Wrongful death

Under California law, a claim for wrongful death lies where the wrongful or

---

[3] Although these definitions are found in the California Penal Code, California courts presume they are applicable in tort actions. 5 B.E. Witkin, Summary of Cal. Law, Torts § 383 (10th ed. 2005).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2496 CAS (JTLx) √<br>CV 06-2568 CAS (JTLx) | Date | July 21, 2008 |
|---|---|---|---|
| Title | Vince Catanho v. United States of America; Estate of Saul Cerros, et al. v. United States of America | | |

negligent act of a person causes the death of another. Cal. Code Civ. P. § 377.60. To prevail, the plaintiff must therefore show that the act causing death was wilful or negligent. Moxon v. County of Kern, 233 Cal. App. 2d 393, 398 (1965).

However, a homicide is justifiable if it is committed by a person in any of the following relevant circumstances:

> [] When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or, [] [w]hen committed in the lawful defense of such person, or . . . when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and imminent danger of such design being accomplished; or, [] [w]hen necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed.

Cal. Penal Code § 197(1),(3),(4).[4]

### C. The Parties' Arguments

As to plaintiffs' assault and battery claims, the United States argues that plaintiffs cannot prove that Officer Tate used unreasonable force. In this regard, the United States argues that Officer Tate reasonably perceived Catanho and Cerros to be fleeing felons who were using the motorcycle on which they riding as a weapon, and who may have been carrying concealed weapons. In addition, the United States argues that Catanho and Cerros, who were in close proximity to Officer Tate, suggested an intent to attack Officer Tate, and to escape by accelerating and driving the motorcycle directly at him.

Next, the United States argues that plaintiffs' negligence claims must be dismissed.

---

[4] In arguing that it is entitled to summary judgment on the Cerros plaintiffs' claim for wrongful death the United States relies on Cal. Penal Code § 196. However, that section applies to "public officers," and for the reasons stated above, it is irrelevant in this FTCA action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2496 CAS (JTLx) √ <br> CV 06-2568 CAS (JTLx) | Date | July 21, 2008 |
|---|---|---|---|
| Title | Vince Catanho v. United States of America; Estate of Saul Cerros, et al. v. United States of America | | |

First, the United States contends that insofar as plaintiffs' negligence claims are predicated on the officers' alleged failure to identify themselves as law enforcement, it is undisputed that the officers did so and that they ordered Catanho and Cerros to stop. The United States argues that to the extent the negligence claims are based on allegations that Officer Tate fired without lawful justification it must fail. According to the United States, Officer Tate acted in self defense when he fired at the oncoming motorcycle.

Finally, the United States argues that the Cerros plaintiffs cannot prevail on their claim for wrongful death because Cerros' killing was justifiable homicide. Specifically, the United States argues that Officer Tate's acts were justified because he shot Cerros in the course of overcoming Cerros' actual resistance to being arrested or in apprehending a fleeing felon. See Cal. Penal Code § 196(2),(3).[5]

In response, plaintiffs argue that Officer Tate lacked probable cause to reasonably believe that Catanho and Cerros posed an imminent threat of death or serious physical injury. Specifically, plaintiffs argue that Officer Tate was confronted by a slow-moving vehicle. Further, plaintiffs argue when he fired the first shot, Officer Tate was out of the path of the motorcycle, and when he fired the fatal shot the motorcycle, and any possible danger, had already passed him.

---

[5] Subdivisions (2) and (3) of Cal. Penal Code § 192 state in pertinent part

Homicide is justifiable when committed by public officers and those acting by their command in their aid and assistance, either . . . [w]hen necessarily committed in overcoming actual resistance to the execution of some legal process, or in the discharge of any other legal duty[] or . . . [w]hen necessarily committed in retaking felons who have been rescued or have escaped, or when necessarily committed in arresting persons charged with felony, and who are fleeing from justice or resisting such arrest.

However, a police officer may use deadly force against a felony suspect only if the felony is a forcible and atrocious one which threatens death or great bodily harm. See Kortum v. Alkire, 69 Cal.App.3d 325, 333 (1977).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2496 CAS (JTLx) √ <br> CV 06-2568 CAS (JTLx) | Date | July 21, 2008 |
|---|---|---|---|
| Title | Vince Catanho v. United States of America; Estate of Saul Cerros, et al. v. United States of America | | |

### D. Analysis

Under plaintiffs' proffered version of the facts it is not clear that the officers acted reasonably as a matter of law. According to Catanho, Cerros was unarmed, and he never attempted to strike Officer Tate with the motorcycle. Cerros drove through the parking lot towards the narrow exit in an attempt to leave. That exit had been partially blocked off by the officers' patrol car. Because the gap was so narrow, Cerros drove toward it at slow rate of speed-approximately 10 miles per hour. Officer Tate fired the first shot while standing at the front passenger side of the patrol car. He was eight feet away from the motorcycle and two feet east of its path. Then, as Cerros and Catanho drove past him, and after he was out of the motorcycles' path, Officer Tate fired a second shot. The second shot penetrated Cerros' back left shoulder, and exited through the right side of his abdomen. Approximately .1 second later, Officer Tate fired a third shot standing behind Catanho and Cerros.

It is clear that the fact that Catanho and Cerros fled cannot in and of itself justify Officer Tate's use of deadly force. Instead, Officer Tate must also have reasonably believed Catanho and Cerros posed an immediate threat to him, or to others. See Kortum v. Alkire, 69 Cal. App. 3d 325, 333 (1977) (""[T]he California Penal Code, as construed by the courts of this state, prohibit[s] the use of deadly force by anyone, including a police officer, against a fleeing felony suspect unless the felony is of the violent variety, i.e., a forcible and atrocious one which threatens death or serious bodily harm, or there are other circumstances which reasonably create a fear of death or serious bodily harm to the officer or to another."). Given that this Court must construe the facts in the light most favorable to plaintiffs, it appears that the second and third shots were fired after the motorcycle drove past Officer Tate. If the motorcycle had already passed Officer Tate, and the suspects did not have a weapon, it cannot be said that shooting at Catanho and Cerros was reasonable as a matter of law. Further, there is a dispute about whether Cerros drove his motorcycle directly at Officer Tate, and the speed at which he was traveling. The parties also disagree about whether the officers identified themselves, and/or ordered them to stop. These factual disputes make summary judgment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2496 CAS (JTLx) √ <br> CV 06-2568 CAS (JTLx) | Date | July 21, 2008 |
|---|---|---|---|
| Title | Vince Catanho v. United States of America; Estate of Saul Cerros, et al. v. United States of America | | |

inappropriate.[6]

     Specifically, as to plaintiffs' assault and battery claims, there are genuine issues of material fact as to whether Officer Tate's use of deadly force "reasonably appeared necessary, in view of all the circumstances of the case." See Vaughn v. Jonas, 31 Cal.2d 586, 600 (1946). With regard to plaintiffs' negligence claims, summary judgment must also be denied. The officers were required to exercise reasonable care under the circumstances, or care in "proportion to the danger to be avoided and the consequences that might reasonably be anticipated." Hilyor v. Union Ice Co., 45 Cal.2d 30, 36 (1955). Here, there are genuine issues of material fact as to whether Officer Tate employed force that was reasonably necessary to protect him and others from wrongful injury to their persons or property. Therefore, there is a question as to whether his use of deadly force to avoid that harm constituted reasonable care. For all of these reasons, the Cerros plaintiffs' wrongful death claim also survives summary judgment. Specifically, because the Court cannot conclude that as a matter of law shooting Cerros was reasonable, the Court cannot conclude that the homicide was justifiable.

---

[6] The United States' cited cases are inapposite because they either involve plaintiffs who committed violent felonies, who were demonstrably attempting to harm the officer, or were decided on the merits. Clark v. Dep't of Pub. Safety, 861 So. 2d 603 (La. App. 2003) (after a trial on the merits, the court entered judgment in favor of the officer finding that the officer reasonably believed that his life was in danger when the plaintiff drove his motorcycle right at him); Viruet v. Sylvester, 131 N.J. Super. 599 (1975) (setting aside trial court's finding, after a bench trial, that defendant police officer was negligent where it was clear that the trial court concluded that the decedent fled from the officer in his car, and after stopping his car, drove at the police officer who had just exited his patrol car); Forrett v. Richardson, 112 F.3d 416 (9th Cir. 1997) (in a section 1983 action, the Ninth Circuit affirmed the district court's order setting aside a jury verdict in plaintiff's favor because the officers had probable cause to believe plaintiff had just committed a violent burglary, plaintiff was attempting to evade arrest at the time (and had given chase for almost an hour), and the officers warned plaintiff that they would use deadly force).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 06-2496 CAS (JTLx) √<br>CV 06-2568 CAS (JTLx) | Date | July 21, 2008 |
|---|---|---|---|
| Title | Vince Catanho v. United States of America; Estate of Saul Cerros, et al. v. United States of America | | |

## V.   CONCLUSION

In accordance with the foregoing, the Court hereby DENIES the United States' motion for summary judgment.

IT IS SO ORDERED.

|  | : | 05 |
|---|---|---|
| Initials of Preparer | PS | |